
**FILED**
DISTRICT COURT OF GUAM

JAN 26 2018

JEANNE G. QUINATA
CLERK OF COURT

IN THE DISTRICT COURT
FOR THE TERRITORY OF GUAM

VINCENT T. TEDTAOTAO,　　　　　)　Civil No. _____
　　　　　　　　Petitioner,　　　)　Crim. No. Cr86-044A
　　　　　　　　　　　　　　　　)
　　　-vs-　　　　　　　　　　　)　PETITION FOR WRIT
　　　　　　　　　　　　　　　　)　OF HABEAS CORPUS
UNITED STATES OF AMERICA,　　　)
　　　　　　　　Respondent.　　　)

18-00005

　　　Now Comes Vincent T. Tedtaotao (hereinafter "Petitioner"),
acting in pro per, and hereby moves the Court to grant the
instant petition for a writ of habeas corpus.

　　　A brief in support of said petition is attached hereto
and incorporated herein by reference.

　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　Vincent Tedtaotao

　　　　　　　　　　　　　　　　　Vincent T. Tedtaotao,
　　　　　　　　　　　　　　　　　Reg. No. 24472-077
　　　　　　　　　　　　　　　　　Petitioner in pro per
　　　　　　　　　　　　　　　　　U.S.P. Allenwood
　　　　　　　　　　　　　　　　　P.O. Box 3000
　　　　　　　　　　　　　　　　　White Deer, PA 17887

ORIGINAL

<u>BRIEF</u>

Based on an incident at a nightclub in Maite, Guam on August 20, 1985, the Guam Superior Court territorial grand jury indicted Petitioner for (1) the murder of David Untalan, in violation of 9 Guam Code Ann. Section 16.30; (2) the attempted murder of Danny Camacho, in violation of 9 Guam Code Ann. Sections 13.10, 16.30; and (3) two counts of use of a deadly weapon, charges which made Petitioner subject to an enhanced sentence under 9 Guam Code Ann. Section 80.37. A jury convicted Petitioner on all charges. Petitioner appealed to the Appellate Division of the District Court of Guam, and then to the Ninth Circuit Court of Appeals. <u>Territory</u> <u>of</u> <u>Guam</u> <u>v.</u> <u>Tedtaotao</u>, 896 F.2d 371 (1990). On appeal, Petitioner claimed that the trial court improperly denied him the ability to present evidence of the victim's violent character to show the victim was the initial aggressor. <u>Id</u>. at 373. Both appellate courts ruled that the evidence was not improperly excluded and affirmed Petitioner's convictions. <u>Id</u>. at 372-73.

Several years later, Petitioner filed a motion to vacate his convictions in the District Court of Guam. (See Exhibit A at 2). The District Court of Guam dismissed the motion for a lack of jurisdiction. <u>Id</u>. Subsequently, Petitioner filed a petition for writ of habeas corpus in the Supreme Court of Guam. The Supreme Court of Guam ruled that Petitioner did not give good cause or provide any explanation as to why he waited such a long

2

time to file the petition and denied the petition for that reason. Id. at 9. Petitioner then requested authorization from the Ninth Circuit Court of Appeals to file another habeas corpus petition. (Exhibit B). The Ninth Circuit ruled on February 17, 2017 that Petitioner did not need authorization to file another habeas corpus petition because his first petition was dismissed without adjudication on the merits for failure to exhaust state remedies. The Court ruled that a copy of the Ninth Circuit's order should be included with the petition. (See Exhibit B). Petitioner now moves for relief in this Court based on the Ninth Circuit's ruling.

I. PETITIONER HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE.

The United States Constitution guarantees that a defendant in a criminal case is entitled to have effective assistance of counsel. Glasser v. United States, 315 U.S. 60 (1942); McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970) (Sixth Amendment right to counsel is right to effective assistance of counsel).

A defendant alleging ineffective assistance of counsel must show that counsel's performance was deficient and that prejudice resulted therefrom. Strickland v. Washington, 466 U.S. 668, 687 (1984). In ineffective assistance of counsel claims, the defendant need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland at 694. A reasonable

3

probability is one "sufficient to undermine confidence in the outcome." Id.

> A. Counsel was ineffective when he failed to request a special jury verdict to determine if Petitioner's crime was paroleable.

On June 26, 2000, the Supreme Court ruled in Apprendi v. New Jersey, 530 U.S. 466 (2000), that any fact which increases a sentence beyond the statutory maximum, other than the fact of a prior conviction, must be charged in the indictment and proven before a jury beyond a reasonable doubt. Thus, after Apprendi, to the extent that the government seeks to subject a drug offender to the higher penalties under 21 USC Section 841(b)(1)(A) or (b)(1)(B), it must submit drug type and quantity to the jury, and the jury must find those facts beyond a reaasonable doubt. See United States v. Murphy, 109 F. Supp.2d 1059 (D. Minn. 2000); United States v. Flowal, 234 F.3d 923 (6th Cir. 2000).

In Alleyne v. United States, 133 S.Ct. 2151 (2013), the Supreme Court extended the rule of Apprendi to mandatory minimum penalties and requires the jury to determine a fact that increases the mandatory minimum penalty for a crime.

In Ring v. Arizona, 536 U.S. 584 (2002), the defendant was tried in an Arizona trial court on charges arising out of his alleged participation in an armored car robbery in which the car's driver was shot and killed. Hearing evidence which was later characterized by a state court as failing to prove beyond a reasonable doubt that the defendant had been a major participant

4

in the robbery or had actually killed the driver, the jury convicted
the defendant of felony murder occurring in the course of the
robbery, but failed to convict him of premeditated murder. Following
this verdict, another alleged participant in the robbery changed
his previous statements and testified, at the defendant's sentencing
hearing, that the defendant had been the leader of the group, had
personally shot the driver, and had sought congratulations for his
good shot. Considering this evidence, the trial judge (1) found
two aggravating factors, in that the defendant had committed the
offense (a) in expectation of receiving something of pecuniary
value, since he had killed the driver in order to obtain the cash,
and (b) in an especially heinous, cruel, or depraved manner, since
the defendant had expressed pride in his marksmanship; (2) found
one mitigating circumstance, the defendant's minimal criminal
record, which was considered insufficient to call for leniency,
and (3) accordingly, sentenced the defendant to death.

In affirming the defendant's death sentence, the Supreme
Court of Arizona (1) rejected the defendant's claim that the state's
capital sentencing scheme violated the Sixth Amendment, as the
court considered itself bound by the decision in Walton v. Arizona,
487 U.S. 639 (1990); (2) noted that the decision in Apprendi v.
New Jersey, in distinguishing and not overruling Walton v. Arizona,
had incorrectly described Arizona's sentencing scheme as requiring
judges, after a jury verdict finding defendants guilty of a capital
crime, to find specific aggravating factors before imposing a

5

death sentence, where the scheme actually permitted judges to determine the existance of factors which made a crime a capital offense; (3) determined that the evidence did not support the aggravating circumstance of depravity, but did support the aggravating circumstance of pecuniary gain; and (4) concluded, after reweighing the aggravating and mitigating circumstances, that a death sentence was still appropriate.

On certiorari, the United States Supreme Court reversed and remanded. In an opinion by Ginsburg, J., joined by Stevens, Scalia, Kennedy, Souter, and Thomas, JJ., it was held that:

(1) Capital defendants, no less than noncapital defendants, were entitled under the Sixth Amendment to a jury determination of any fact on which a legislature conditioned an increase in defendants punishment.

(2) Given the Arizona Supreme Court's authoritative interpretation of the state's death-penalty law, Arizona's judge-alone scheme for finding aggravating factors was invalid under the Sixth Amendment, at least to the extent that, as in the case at hand, the aggravating factors asserted by the state did not relate to past convictions.

(3) The decision in Walton v. Arizona (a) could not be reconciled with the decision in Apprendi v. New Jersey, and (b) was overruled to the extent that Walton v. Arizona had allowed a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for the imposition of the death penalty.

6

Guam's aggravated murder statute defines aggravated murder as a kind of "criminal homicide." 9 G.C.A. Section 1630(a)(2) (1987). See Territory of Guam, 1994 U.S. App. LEXIS 22012 (9th Cir. 1994). "Criminal homicide" requires one of five mental states: (1) intentionally and with premeditation, (2) intentionally, (3) knowingly, (4) recklessly, or (5) by criminal negligence. 9 G.C.A. Section 16.20. This statutory language indicates that a mens rea of at least criminal negligence must be found with respect to aggravated murder in Guam.

Title 9 GCA Section 16.40 defines murder as including those that are committed knowingly or intentionally. Section 1640(b) establishes life imprisonment with the possibility of parole as the sentence for murder pursuant to Section 16.40. Section 80.72 was enacted in 1977 and provides:

> "Unless otherwise provided by law, every person confined in a territorial penal or correctional institution shall be eligible for release on parole at any time after the service of two-thirds (2/3) of his fixed sentence or after a greater time set by the court, which shall state reasons therefor or in the case of a person sentenced to life imprisonment, after such person has been confined for fifteen (15) years."

See People of the Territory of Guam v Crisostomo, 1995 U.S. Dist. LEXIS 15125 (Dist. Ct. 1995).

Under Apprendi, Ring, and Alleyne, the above statutes required the jury to determine whether Petitioner's crime was paroleable or nonparoleable. Counsel provided ineffective assistance when he failed to request that a special jury verdict be submitted to the jury to make that determination. Because this issue was not

7

submitted to the jury to make that determination, Petitioner must automatically be resentenced under the default section of the statute and his new sentence must be a sentence with parole eligibility after fifteen (15) years.

### B. Counsel was ineffective by failing to raise a diminished capacity defense.

Petitioner has diminished capacity which is substantial. His counsel's failure to present a diminished capacity defense at trial resulted from counsel's unreasonably limited investigation and he was, accordingly, ineffective.

The defense of diminished capacity, which encompasses voluntary intoxication and mental defect, is available to defendants who admit criminal culpability but contest the degree of culpability based upon an inability to formulate the specific intent to kill. See Commonwealth v. Weiss, 622 Pa. 663, 81 A.3d 767, 796 (Pa. 2013) (citations omitted); see Commonwealth v. Padilla, 622 Pa. 449, 80 A.3d 1238, 1263 (Pa. 2013), cert. denied, Padilla v. Pennsylvania, 134 S.Ct. 2725 (2014) ("[T]o prove diminished capacity due to voluntary intoxication, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities."); Commonwealth v. King, 618 Pa. 405, 57 A.3d 607, 622 (Pa. 2012) (noting that "under this Court's prevailing precedent, [] a [defense of diminished capacity] to first-degree murder is only available to defendants who admit they killed the victim, but contest the degree of guilt based on

8

an inability, at the time of the offense, to formulate a specific intent to kill due to a mental defect or voluntary intoxication."). Further, "the authority to concede liability and to authorize the presentation of a diminished capacity defense rests solely with the accused. Commonwealth v. Hutchinson, 611 Pa. 280, 25 A.3d 277, 312 (Pa. 2011) (finding that a diminished capacity defense was not available to defendant because he "did not concede any liability in the killing of the victim. Rather [defendant] relied on an innocence defense, presenting an alibi witness, attempting to undermine the credibility of the child witnesses, and attempting to inculpate the victim's husband in her murder.").

Only expert mental health testimony that "speaks to mental disorders affecting the cognitive functions necessary to formulate specific intent" is relevant to support the defense. Commonwealth v. Terry, 513 Pa. 381, 521 A.2d 398, 404 (Pa. 1987) (quoting Commonwealth v. Weinstein, 499 Pa. 106, 451 A.2d 1344, 1347 (Pa. 1982)); Commonwealth v. McCullum, 558 Pa. 590, 738 A.2d 1007, 1009 (Pa. 1999); Commonwealth v. Legg, 551 Pa. 437, 444-45, 711 A.2d 430 (Pa. 1998).

In Gorby v. Wetzel, 210 F. Supp.3d 725 (W.D. Pa. 2016), the defendant argued that his counsel was ineffective for failing to investigate and raise a diminished capacity defense. The Court ruled that the record reflected that trial counsel interviewed a number of fact witnesses regarding the crime and the night in question. However, at best, counsel conducted only a limited,

9

rudimentary investigation of Garby's mental health and social history, which investigation consisted solely of talking with Garby, his mother, and step-father. He did not request any mental health evaluations and he did not retain mental health experts to present available evidence of voluntary intoxication and diminished capacity to the jury. According to Chunko [defense counsel], he had no tactical or strategic reason for not investigating a diminished capacity defense. Id. at 741.

Guam Code Ann. Section 7.19 codifies the diminished capacity defense, providing that "evidence that the defendant suffered from mental illness, disease or defect is admissible whenever it is relevant to prove the defendant's state of mind." The threshold level of diminished capacity necessary to avoid criminal responsibility is the lack of substantial capacity. G.C.A Section 7.16. As such, the diminished capacity defense requires the defendant not simply to show a diminished capacity, but to show by a preponderance of the evidence that such diminished capacity is substantial as to the offense under consideration.

In this case, Petitioner's counsel failed to reasonably investigate, develop, and present a diminished capacity defense. Had trial counsel conducted a reasonable investigation into diminished capacity, he would have obtained and presented expert testimony establishing Petitioner's diminished capacity.

Petitioner's counsel's performance fell below an "objective standard of reasonableness" because he failed to interview

10

Petitioner or any expert witnesses regarding Petitioner's diminished capacity. Having never spoken with them, Petitioner's counsel could not have fully assessed their version of the events, their credibility and demeanor, or any other aspect of Petitioner's mental health that might have reinforced his defense. Strickland held that "[s]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Although counsel here made some investigation (he met with his client Vincent Tedtaotao at least), counsel did not follow up with any expert witnesses or talk to Petitioner regarding his mental health. Therefore, the rule of Strickland requiring "reasonable professional judgments" before limiting investigation is offended here. Having never interviewed Petitioner or his family regarding his mental health, or interviewing any expert witnesses, Petitioner's counsel could not have determined what they would have said concerning his diminished capacity, whether they would have been credible defense witnesses, and whether they should have been called to testify to aid the defense. The record shows that counsel did not make a reasonable professional judgment to ignore an important defense.

Under Strickland, this Court must evaluate whether Petitioner's counsel's failure to interview said witnesses prejudiced Petitioner. To establish prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the

11

result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

The government's theory at trial was that Petitioner knowingly and intentionally murdered the victim.

Petitioner's theory at trial was that he was not the initial aggressor and acted in self-defense. Thus, the above evidence of Petitioner's mental health would have provided Petitioner with a proper defense. An expert witness was important to support Petitioner's diminished capacity defense and may have led to a different verdict, but was not considered by Petitioner's counselor, who did not discuss Petitioner's mental health with him or contact an expert witness. Hence, there is a reasonable probability that, but for Petitioner's counsel's failure to interview an expert or consult with Petitioner regarding his mental health, the verdict would have been different. <u>See</u> <u>Blackburn v. Foltz</u>, 828 F.2d 1177, 1183 (6th Cir. 1987) (Although [defense counsel] did make one trip to the Camelot Bar to investigate possible defenses, he for no apparent reason failed to investigate a known and potentially important alibi witness. Under <u>Strickland</u> "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691); <u>Workman v. Tate</u>, 957 F.2d 1339, 1345 (6th Cir. 1992) (defense counsel's failure to contact two witnesses defendant was with during events which led to his arrest was ineffective assistance

12

of counsel); Harris v. Reed, 894 F.2d 871, 879 (7th Cir. 1990)
(petitioner prejudiced by counsel's failure to call defense
witnesses); Chambers v. Armontrout, 885 F.2d 1318, 1323 (8th Cir.
1989) (Counsel's decision not to interview and present witnesses
supporting defendant's self-defense theory meets deficiency prong);
United States ex rel. Cosey v. Wolff, 727 F.2d 656 (7th Cir. 1984)
(defense counsel's out-of-hand rejection of potential witnesses
and decision not to call witness because prosecutions case was
so weak falls below the minimum standards of professional
competence); Mitchell v. Ayers, 309 F. Supp.2d 1146, 1155 (N.D.
Cal. 2004) (counsel's failure to investigate corroborative witness
prejudiced petitioner).

Additionally, Petitioner submits that his diminished capacity
establishes good cause and provides an important explanation as
to why he waited such a long time to file his habeas corpus
application. Petitioner is mentally ill and incompetent. This
was brought up in Petitioner's initial habeas corpus. (See
Exhibit A). Another inmate has prepared this application for him
after requesting that Petitioner allow him to review his legal
material after noticing his mental state worsening. Petitioner
is requesting the Court to appoint counsel to litigate this matter
for him.

Based on all of the above, this Court should appoint counsel,
hold an evidentiary hearing, and grant a new trial.

> C. Counsel was ineffective during plea bargain
>    negotiations.

13

The right to effective assistance of counsel extends to the plea-bargaining process during which all criminal defendants are "entitled to the effective assistance of competent counsel." Lafler v. Cooper, 132 S.Ct. 1376 (2012) (internal quotation marks omitted); see also Missouri v. Frye, 132 S.Ct. 1399, 1407 (2012) ("In today's criminal justice system...the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant,").

The decision to plead guilty -- first, last, and always -- rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequences of a conviction. Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003). "On the other hand, the attorney has a clear obligation to fully inform her client of the available options." Id. "The duty of defense counsel to consult is paramount when a client has to decide whether or not to waive a constitutional right, such as the right to trial." Miller v. Straub, 299 F.3d 570, 580 (6th Cir. 2002).

In Lafler v. Cooper, 132 S.Ct. 1376 (2011), the Supreme Court ruled on an ineffective assistance of counsel claim regarding a plea. Cooper was charged under Michigan law with assault with intent to murder and three other offenses. The prosecution offered

14

to dismiss two of the charges and to recommend a 51 to 85 month sentence on the other two, in exchange for a guilty plea. In a communication with the court, Cooper admitted his guilt and expressed a willingness to accept the offer. But he rejected the offer, allegedly after his attorney convinced him that the prosecution would be unable to establish intent to murder because the victim had been shot below the waist. At trial, Cooper was convicted on all counts and received a mandatory minimum 185 to 360 month sentence. In a subsequent hearing, the state trial court rejected Cooper's claim that his attorney's advice to reject the plea constituted ineffective assistance. The Michigan Court of Appeals affirmed, rejecting the ineffective-assistance claim on the ground that Cooper knowingly and intelligently turned down the plea offer and chose to go to trial. Cooper renewed his claim in federal habeas. Finding that the state appellate court had unreasonably applied the constitutional effective assistance standards laid out in <u>Strickland</u> <u>v.</u> <u>Washington</u>, and <u>Hill</u> <u>v.</u> <u>Lockhart</u>,[1]/ the district court granted a conditional writ granting relief. The Sixth Circuit affirmed. Applying <u>Strickland</u>, it found that counsel provided deficient performance by advising Cooper of an incorrect legal rule, and that Cooper suffered prejudice because he lost the opportunity to take the more favorable sentence offered in the plea. The Supreme Court granted certiorari and agreed with the Sixth Circuit.

1/ 474 U.S. 52 (1985)

Case 1:18-cv-00005   Document 1   Filed 01/26/18   Page 15 of 31

In the present case, Petitioner's counsel did not advise him that the charges in this case carried a mandatory life sentence without parole. Although Petitioner was told that the charge carried up to life, he did not know if he was convicted he would not be eligible for parole. Petitioner believed he would be entitled to parole at some point in his sentence. If Petitioner had known that it was mandatory life without parole if convicted at trial, he would have accepted a plea bargain instead of risking a mandatory life sentence without parole. (Exhibit C). Therefore, Petitioner received ineffective assistance of counsel during plea bargain negotiations which resulted in prejudice therefrom because he lost the opportunity to receive a sentence of less than life without parole.

Remedies for the deprivation of the Sixth Amendment right to the effective assistance of counsel "should be tailored to the injury suffered from the constitutional violation." United States v. Morrison, 449 U.S. 361, 364 (1981); United States v. Day, 969 F.2d 39, 47 (3rd Cir. 1992). Here, Petitioner should be afforded the opportunity to renew pretrial bargaining, with a new trial to result if negotiations fail. Commonwealth v. Napper, 254 Pa. Super. 54, 385 A.2d 521 (1978); Turner v. Tennessee, 858 F.2d 1201 (6th Cir. 1988).

## RELIEF

WHEREFORE, in light of the above, Petitioner requests the following relief:

16

1) Appoint counsel to represent Petitioner and file a supplemental brief;

2) Order an evidentiary hereing;

3) Vacate Petitioner's convictions and renew pretrial bargaining;

4) Order a new trial; or

5) Order Petitioner resentenced; and

6) Grant Petitioner such further relief as this Court deems fair and just.

Respectfully submitted,

Vincent T. Tedtaotao
Reg. No. 24472-077
Petitioner in pro per
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

17.

FILED

2014 JUL 18 PM 3: 33

SUPREME COURT
OF GUAM

# IN THE SUPREME COURT OF GUAM

| | | |
|---|---|---|
| VINCENT T. TEDTAOTAO, | ) | Supreme Court Case No. WHC12-001 |
| | ) | Superior Court Case No. CR0044-86 |
| Petitioner, | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| SUPERIOR COURT OF GUAM, et al., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Vincent T. Tedtaotao filed a Petition for Writ of Habeas Corpus in the Supreme Court of Guam. In the petition, Tedtaotao argues: (1) he should be transferred back to Guam to enable him to exhaust his state remedies, (2) the District Court of Guam violated his due process rights when dismissing his Motion to Vacate, (3) he was illegally transferred from a penitentiary in Guam to a federal facility in Pennsylvania, and (4) he was denied the right to effective assistance of counsel. For the reasons set forth below, we deny the Petition for Writ of Habeas Corpus.

## I. Jurisdiction

"Each of the Justices shall have the power to issue writs of habeas corpus upon petition by or on behalf of any person held in actual custody . . . ." 7 GCA § 3108(c)(2) (2005). Petitioner filed a habeas corpus petition and is currently incarcerated in a federal penitentiary in

Exhibit A



RECEIVED
CUNLIFFE & COOK
Date:
Time:

Case 1:18-cv-00005   Document 1   Filed 01/26/18   Page 18 of 31

Pennsylvania. Thus, the Supreme Court justices have jurisdiction to issue a writ of habeas corpus.[1]

## II. Factual and Procedural Background

Tedtaotao was indicted by a grand jury for: (1) the murder of David Untalan, in violation of 9 GCA § 16.30; (2) the attempted murder of Danny Camacho, in violation of 9 GCA §§ 13.10 and 16.30; and (3) two counts of use of a deadly weapon, charges which made Tedtaotao subject to an enhanced sentence under 9 GCA § 80.37. *Territory of Guam v. Tedtaotao*, 896 F.2d 371, 372 (1990). A jury convicted Tedtaotao on all charges. *Id.* Tedtaotao appealed to the Appellate Division of the District Court of Guam, and then to the Ninth Circuit Court of Appeals. *Id.* On appeal, Tedtaotao claimed that the trial court improperly denied him the ability to present evidence of the victim's violent character to show the victim was the initial aggressor. *Id.* at 373. Both appellate courts ruled that the evidence was not improperly excluded and affirmed Tedtaotao's convictions. *Id.* at 372-73.

Twenty-three years after being found guilty on all charges, Tedtaotao filed a motion to vacate his convictions in the District Court of Guam. Pet. Writ Habeas Corpus at 4 (Aug. 8, 2012). The District Court of Guam dismissed the motion for a lack of jurisdiction. *Id.* Subsequently, Tedtaotao filed this Petition for Writ of Habeas Corpus in the Supreme Court of Guam, *pro se*. Tedtaotao requests that this court hold an evidentiary hearing to determine the issues within the Petition and allow him to be present at the hearing. *Id.* at 12.

---

[1] On many instances, this court chose to exercise its discretionary jurisdiction to analyze an appeal as an original petition for a writ of habeas corpus. *See, e.g., Naron v. Bitanga*, 1999 Guam 21 ¶ 4; *People v. Natividad*, 2005 Guam 28 ¶ 23; *Borja v. Bitanga*, 1998 Guam 29 ¶ 14. It may be inferred from these cases and from 7 GCA § 3108(c)(2) that the Supreme Court of Guam has original jurisdiction over habeas corpus petitions although the Guam Code provides that an "[a]pplication for the writ is made by petition to the Superior Court . . . ." 8 GCA § 135.12 (2005).

## III. Discussion

A. Transfer of Tedtaotao to a Federal Correctional Facility—Exhaustion of State Remedies

    Tedtaotao claims that he has not been afforded an opportunity to exhaust his state remedies, resulting in a procedural default. *Id.* at 2-3. According to Tedtaotao, a procedural default may be overcome by either a demonstration that a failure to consider his claims will result in a fundamental miscarriage of justice or an adequate showing that he was prejudiced by his failure to exhaust his state court remedies. *Id.* at 3. The prejudice and miscarriage of justice, Tedtaotao states, are a result of his transfer from Guam to a federal correctional facility in Pennsylvania. *Id.* Tedtaotao contends that he is currently unable to exhaust his state remedies because he is in Pennsylvania, and that the only way to avoid the miscarriage of justice is to return him to Guam so that he is able to exhaust his state remedies properly. *Id.* at 3-4.

    This petition uses equivocal language on key legal terms. Tedtaotao uses the term "procedural default" as a reason for his inability to be transferred back to Guam. However, a "procedural default" situation is one in which a petitioner files a habeas claim in a federal court after being dismissed by a state court for procedural reasons:

> Because of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody.

*Coleman v. Thompson*, 501 U.S. 722, 722-23 (1991). The procedural default doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30. Moreover, "[i]n procedural default cases, the cause standard requires the petitioner to show that some objective

factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted).

Tedtaotao's petition is before this court, not a federal court. As stated above, the procedural default doctrine applies only to petitions filed in federal court that have been dismissed in state court for procedural reasons. Despite Tedtaotao's argument, this is not a case of procedural default because the petition was not filed in a federal court.

Tedtaotao also argues that he is not able to exhaust his state remedies because of his involuntary relocation. Pet. Writ Habeas Corpus at 4. However, the requirement of state remedy exhaustion does not apply to Tedtaotao. "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732. Tedtaotao does not need to exhaust his state remedies because this petition is not in federal court, nor has it been procedurally barred in state court. Therefore, Tedtaotao does not need to be transferred back to Guam to satisfy a requirement of state remedy exhaustion.

## B. District Court of Guam's Denial of Tedtaotao's Motion for Post-Conviction Relief

Tedtaotao next asserts that the District Court erred in denying his motion for a lack of jurisdiction. Pet. Writ Habeas Corpus at 5. Tedtaotao claims the District Court of Guam has original jurisdiction over his motion pursuant to 48 U.S.C. § 1424(c), which states: "In addition to the jurisdiction described in subsection (b) of this section, the District Court of Guam shall have original jurisdiction in all other causes in Guam, jurisdiction over which is not then vested by the legislature in another court or other courts established by it." 48 U.S.C.A. § 1424(c) (Westlaw through Pub. L. 113-120 (2014)). Tedtaotao contends that this statute gives the

District Court jurisdiction over his matter and the case should now be transferred to the Supreme Court of Guam. *Id.* at 6.

At the time of Tedtaotao's conviction in 1986, the Supreme Court of Guam, which was established in 1996, did not exist, and appeals were brought to the Appellate Division of the District Court of Guam and then to the Ninth Circuit Court of Appeals. Tedtaotao's appeals were heard in both of these courts. He then sought to file his motion to vacate in the District Court of Guam in 2009. However, in 2009 the Supreme Court of Guam had jurisdiction. 48 U.S.C.A. § 1424-3(a); 7 GCA § 3107(b) (2005). Thus, the District Court of Guam did not err by dismissing Tedtaotao's motion to vacate for lack of jurisdiction.

Although Tedtaotao claims that his due process rights were violated, he does not clearly articulate a due process argument. Pet. Writ Habeas Corpus at 4-6. Tedtaotao states, without providing supporting law or fact, that the dismissal of his motion by the District Court of Guam constitutes a due process violation. However, the dismissal of an improperly filed motion for lack of jurisdiction is not a violation of due process.

## C. Validity of Tedtaotao's Transfer to an Out-of-State Prison

### 1. Constitutionality of Prison Transfer

Tedtaotao was sentenced to life in prison in 1986 and was incarcerated in Guam. *Id.* at 3. In 1997, he was transferred to a federal correctional facility in Pennsylvania. *Id.* Tedtaotao claims that his transfer was unconstitutional because it was done without a valid Compact Agreement Contract. *Id.* at 7. Tedtaotao states that he is not able to find a contract between Guam and Pennsylvania for his transfer nor is he able to find a record of the payments Guam is making to the federal penitentiary. Because Tedtaotao cannot find these documents, he claims the transfer is unconstitutional. *Id.*

Pursuant to 9 GCA § 90.45:

> The Director is authorized to enter into one or more contracts with the Attorney General of the United States pursuant to the authority granted to the Attorney General of the United States by Title 18, United States Code, § 5003, for the custody, care, subsistence, education, treatment and training in one or more Federal correctional institutions, of persons convicted of criminal offenses in the courts of the territory of Guam; provided, that any such contract shall provide for the reimbursement of the United States in full for all costs or other expenses incurred by the United States . . . .

9 GCA § 90.45 (2005). The Director of Corrections has express authority to transfer prisoners to federal correctional institutions under section 90.45, so long as Guam reimburses the United States in full for all costs of keeping the prisoner in custody. *Id.* Moreover, under 9 GCA § 90.47, the Director of Corrections has the authority to transfer inmates outside of Guam. 9 GCA § 90.47 (2005) ("The Director of Corrections is authorized to transfer an inmate to a correctional institution outside the Territory of Guam in non-emergency circumstances.").

Tedtaotao's inability to find the Compact Agreement Contract for his transfer has no bearing on the validity of the transfer because Guam law authorizes the transfer of prisoners off island.

## 2. Cruel and Unusual Punishment

Tedtaotao contends that his transfer has proven to be cruel and unusual punishment. Pet. Writ Habeas Corpus at 7. To sustain an Eighth Amendment, cruel and unusual punishment claim, "the plaintiff must prove a denial of 'the minimal civilized measure of life's necessities,' occurring through 'deliberate indifference' by prison personnel or officers." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citations omitted). In *Keenan*, the court considered certain basic necessities to determine the possibility of cruel and unusual punishment. *Id.* Under

consideration were such conditions as: the prisoner's ability to exercise, freedom from obnoxious noise and lighting, proper ventilation, and adequate food and water. *Id.* at 1089-91.

To illustrate his mistreatment, Tedtaotao claims he was transferred to the most dangerous prison in the United States while he was unable to speak or write in English. Pet. Writ Habeas Corpus at 7. Since his incarceration, both of his parents have passed away, which resulted in a scattering of his family throughout Guam. *Id.* at 12. Tedtaotao also claims his transfer pains him because his roots remain firmly in Guam. *Id.*

A transfer from one prison to another does not in itself constitute cruelty nor is it unusual. The reasons given by Tedtaotao to prove cruel and unusual punishment do not show that he has been denied the minimal civilized measure of life's necessities. Tedtaotao states that he was relocated to a more dangerous prison, but does not state how the transfer deprived him of certain life necessities. Furthermore, being in close proximity to family members is not considered a necessity of life. Thus, the transfer of Tedtaotao does not rise to the level of cruel and unusual punishment under the Eighth Amendment.

**D. Ineffective Assistance of Counsel and Request for an Evidentiary Hearing**

Tedtaotao's argument for ineffective assistance of counsel is twofold. Tedtaotao contends that his defense counsel failed to communicate a plea agreement to the prosecutor and failed to put on character evidence showing the violent character of the victim.

In regards to the presentation of evidence of the victim's aggressive character, the issue has been fully litigated. Tedtaotao brought this very issue up on appeal to the Appellate Division of the District Court of Guam and in the Ninth Circuit Court of Appeals. *Tedtaotao*, 896 F.2d at 372. During trial, the prosecutor stipulated to the fact that the victim (Untalan) was the first aggressor. *Id.* at 373. Therefore, defense counsel was not allowed to introduce

evidence of Untalan's aggressive character because the "concession left no doubt that Untalan was the initial aggressor." *Id.* The Ninth Circuit ruled that "the trial court did not abuse its discretion when it ruled that Tedtaotao could not use evidence of Untalan's character to prove Untalan was the initial aggressor." *Id.* The trial court was aware that Untalan was the first aggressor, and defense counsel was barred from presenting evidence of Untalan's aggressive character. *Id.* There is nothing to suggest that defense counsel fell below the standard for effective assistance of counsel.

In regards to the plea agreement, Tedtaotao claims that his counsel did not listen to his request to plead guilty. He states that prior to trial, he informed defense counsel of his desire to plead guilty to any lesser included offense to murder. Pet. Writ Habeas Corpus at 10. According to Tedtaotao, defense counsel stated to Tedtaotao that there was not a lesser offense to murder available and that he should go to trial. *Id.* at 10-11.

Tedtaotao requests an evidentiary hearing to assess the merits of his case. Pet. Writ Habeas Corpus at 9. According to counsel, Tedtaotao would like to be present at the evidentiary hearing. Statement of No Am. Pet. (Oct. 7, 2013).

"A petition for writ of habeas corpus that is substantially delayed without good cause is considered untimely and will not be considered on the merits unless the defects alleged by petitioner constitute a 'fundamental miscarriage of justice.'" *In re Douglas*, 132 Cal. Rptr. 3d 582, 588 (Ct. App. 2011). When a habeas petitioner succeeds in obtaining a new trial, the "erosion of memory" and "dispersion of witnesses" that result from the lapse of time "prejudice the government and diminish the chances of a reliable criminal adjudication." *McCleskey*, 499 U.S. at 491 (further explaining that granting new trials also disturbs the finality of judgments). Because of the difficulty associated with holding a hearing after a substantial passage of time,

habeas relief may be barred by laches. *Ignacio v. People*, 2012 Guam 14 ¶ 37 ("'Laches applies in the face of unreasonable delay and prejudice to the opposing party.'").

Here, Tedtaotao filed his petition with the District Court of Guam in 2009 following his 1986 convictions. Tedtaotao does not give good cause or provide any explanation as to why he waited such a long time to file the petition. In *Ignacio*, this court ruled that a 26-year delay without an explanation for the delay was an unreasonable passage of time. *Id.* ¶ 38. Similarly, Tedtaotao filed his petition in the District Court 23 years after his conviction without any justification for the delay. Such a time period is unreasonably long and shows a lack of diligence in the pursuit of relief.

At this point—28 years after Tedtaotao's conviction—the erosion of memory and lack of records are hindrances to the proper administration of justice. Tedtaotao makes claims in his petition that his counsel did not adhere to his desire to plead guilty. Despite the fact that Tedtaotao offers no evidence other than his statements to support this claim, it is unverifiable because of the passage of time. The claim would require Tedtaotao's counsel to have a working memory of the events from three decades past. Likewise, the gathering of evidence pertaining to Tedtaotao's claim would prove to be equally frustrating based on the years removed. Thus, as in *Ignacio* and *In re Douglas*, the unreasonable delay of over twenty years would result in prejudice. *Ignacio*, 2012 Guam 14 ¶ 42; *In re Douglas*, 132 Cal. Rptr. 3d at 589.

Moreover, although Tedtaotao's claim is not based on new information, he did not file his petition until many years later. Because the claim for ineffective assistance of counsel should have been known to Tedtaotao within a reasonable time after trial and he waited 23 years before filing the petition in the District Court, we determine the delay was unreasonable.

Therefore, Tedtaotao's request for relief is denied as untimely, and an evidentiary hearing is unnecessary.

### IV. Conclusion

Along with the arguments asserted in the petition appearing to be facially meritless, the petition was filed after an unreasonable delay. Accordingly, the Petition for Writ of Habeas Corpus is hereby **DENIED.**

**SO ORDERED** this _18th_ day of July, 2014.


_____
F. PHILIP CARBULLIDO
Associate Justice

_____
KATHERINE A. MARAMAN
Associate Justice


_____
ROBERT J. TORRES
Chief Justice

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Supreme Court of Guam.

JUL 18 2014

By: _Charlene T. Santos_
Deputy Clerk
Supreme Court of Guam

Page 10 of 10

**FILED**

UNITED STATES COURT OF APPEALS

FEB 17 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VINCENT T. TEDTAOTAO, | No. 16-72252 |
| Applicant, | |
| v. | |
| UNITED STATES OF AMERICA, | ORDER |
| Respondent. | |

Before: GOODWIN, FARRIS, and FERNANDEZ, Circuit Judges.

The application for authorization to file a second or successive 28 U.S.C.

§ 2254 habeas corpus petition in the district court is denied as unnecessary.

Because his first petition challenging his 1986 murder conviction was dismissed

without adjudication on the merits for failure to exhaust state remedies, the

applicant may file a habeas petition without obtaining prior authorization. *See* 28

U.S.C. § 2244(b)(3)(A); *Slack v. McDaniel*, 529 U.S. 473, 487 (2000).

If the applicant files a habeas petition in the district court, a copy of this

order should be included with the petition.

No further filings will be entertained in this case.

Exhibit B

## IN THE DISTRICT COURT
## FOR THE TERRITORY OF GUAM

VINCENT T. TEDTAOTAO        )     Civil No. _____
        Petitioner,      )     Crim. No. Cr86-044A

    -vs-                )
                      )     AFFIDAVIT OF
PEOPLE OF THE TERRITORY OF GUAM,  )     VINCENT T. TEDTAOTAO
        Respondent.      )

I, Vincent T. Tedtaotao, hereby depose and state the following:

1)  I am the Defendant-Petitioner in the above entitled case.

2)  As a child I was a slow learner and always had trouble staying focused on what I was learning. As I got older I was diagnosed as having a diminished capacity which was substantial. I advised my attorney of this at the time of my trial. My attorney did not look into the matter or tell me there was a diminished capacity defense.

3)  Prior to trial in this case my attorney did not advise me that the charges carried a mandatory life sentence without parole. Counsel told me that the charges carried up to life but never advised me that I would not be eligible for parole. If I had known that it was mandatory life without parole I would have accepted a plea bargain instead of risking a mandatory life sentence without parole. At some time during the proceedings my attorney told me the prosecutor would allow me to enter a plea of guilty to a lesser included offense. I do not remember what

Exhibit C

the lesser included offense was.

Signed under the penalties of perjury this 9th day of January, 2017. See 28 USC Section 1746.

Vincent Tedtaotao
Vincent T. Tedtaotao

2



LC716842589US

Vincent
United States Penitentiary Allenwood
P.O. Box 3000
White Deer, PA
White Deer, PA 17887

PS Form **2976**, July 2013 PSN 7530-01-000-9833

☐ Documents    ☐ Commercial sample
☐ Gift    ☐ Humanitarian Donation
☐    ☐ Merchandise
☐    ☐ Other    ☐ Dangerous Goods

Detailed description of contents (1)

AES Exemption (8)
☐ NOEEI § 30.37(a)
☐ NOEEI § 30.37(h)

I certify the particulars given in this customs declaration are correct. This item does not contain any undeclared dangerous articles, or articles prohibited by legislation or by postal or customs regulations. I have met all applicable export filing requirements under federal law and regulations.

Sender's Signature and Date (9)

Qty. (2) | Weight (3) lb. oz. | Value (4) (US $) | HS Tariff # (6) | Country of Origin (6)

Total: (7)

WHITE DEER, PA
Mailing Office Date Stamp
JAN 19 2018

JAN 16 2018

legal mail

**MAILED FROM**
**U.S. PENITENTIARY**

⟨⟩24472-077⟨⟩
Clerk Of Court
District Court of Guam
520 W. Soledad Ave. FL 4
Hagatna, GU 96910
United States

**RECEIVED**
JAN 26 2018


**DISTRICT COURT OF GUAM**
**HAGATÑA, GUAM**

Screened
United States Marshals Service
District of Guam
Date

U.S. POSTAGE
PAID
WHITE DEER, PA
JAN 17, 18
AMOUNT
$0.00
R2305K13897208
1006

PSN 7690-17-000-0906    January 2014

7026 7670 0000 2504 4269

